IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAWRENCE M. LARSON,            )
                               )
        Plaintiff,             )
                               )
            v.                 )     Civil Action No. 05-214 Erie
                               )
CSX TRANSPORTATION, INC.,      )
                               )
        Defendant.             )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Plaintiff, Lawrence M. Larson ("Larson"), brought suit against Defendant, CSX Transportation, Inc. ("CSX"), pursuant to the Employee Retirement Income Security Act, as amended, ("ERISA"), 29 U.S.C. § 1001 et seq. and the Age Discrimination in Employment Act of 1967, as amended, (the "ADEA"), 29 U.S.C. § 621 et seq. related to his removal from a trainmaster position. Presently pending before the Court is CSX's Motion for Summary Judgment. For the reasons that follow, the motion shall be granted.

### I. BACKGROUND

Larson was born on October 5, 1955. Def. Ex. 1, Larson Dep. p. 8. He began employment with Consolidated Rail Corporation ("Conrail") in 1974. Complaint ¶ 6. On June 1, 1999, he became an employee of CSX due to an acquisition by CSX and Norfolk Southern Corporation of the Conrail properties. Def. Ex. 1, Larson Dep. p. 7. Larson held the position of trainmaster, a non-union supervisory position, and reported directly to Harry Crawford, a District Superintendent for the Great Lakes Division. Id. at pp. 8, 11, 13; Def. Ex. 4, Crawford Dep. p. 28. Larson worked in both the Ashtabula yard and Collinwood yard in Cleveland at Crawford's direction. Def. Ex. 4, Crawford Dep. pp. 30-31.

In early 2003, Crawford conducted Larson's 2002 annual performance evaluation. Def. Ex. 4, Crawford Dep. pp. 37-39. It is undisputed that Larson received the lowest score of any employee in the entire Great Lakes Division for 2002. According to Crawford, Larson was a "nice guy" but not a good manager or self starter and was not an effective trainmaster. Def. Ex. 4, Crawford Dep. pp. 30-31, 46.

1

As part of the performance evaluation process, Larson had the opportunity to rate himself with respect to "performance goals." In a number of areas, he rated himself very low, and indeed, his own evaluation was similar to that of Crawford's. Def. Ex. 5. Larson conceded at oral argument that there is no record evidence to suggest that Crawford was driven by age animus in rating him as low as he did on the 2002 performance evaluation. Hearing Tr. p. 23 [Doc. No. 27]. Larson was subsequently placed on a performance improvement plan which he successfully completed in early 2003. Def. Ex. 1, Larson Dep. pp. 52-53; Def. Ex. 4, Crawford Dep. pp. 50, 57.

In July 2003, CSX initiated a reorganization and reduction-in-force plan, primarily in the operating departments. Def. Ex. 12, Tuchek Aff. ¶ 3. According to Anthony Tuchek, Vice President of the Northern Region for CSX, this plan involved evaluating which positions were necessary to the company, eliminating positions, and placing or retaining the most competent employees in the positions that remained. Id. at ¶ 9. The employee performance evaluations completed for the year 2002 were utilized as the primary tool in determining whether an individual would be retained or released. Id. at ¶ 10. Employees in CSX's operating departments were ranked and rated, and placed in one of four groups, or "quartiles," based on their 2002 performance evaluation. Id. at ¶ 11. According to Tuchek, Larson was placed in the fourth quartile due to his poor performance evaluation score. Id. at ¶ 12.

Approximately 106 management positions from the operating department and 140 total management positions were eliminated in the reorganization. Def. Ex. 12, Tuchek Aff. ¶ 3. If an individual's job was eliminated as part of the reduction-in-force and that individual's performance rating did not place him or her in the fourth quartile, they would be eligible to either "cascade" to a lower level management position, assuming they were qualified for the job, or alternatively, would be eligible to be "drafted" for another position held by an individual whose score placed them in the fourth quartile. Id. at ¶ 14. If, however, an individual in an eliminated position was in the fourth quartile, they would not be eligible to either cascade into a lower level management position or be drafted for a different position. Id. at ¶ 15.

One of the jobs eliminated in the reorganization and reduction-in-force plan was an assistant trainmaster job in Louisville, Kentucky held by David Leeber. Id. at ¶¶ 17-18.

According to CSX, Leeber's 2002 performance evaluation score placed him in the third quartile, and consequently, he was eligible to be drafted for another position. Id. at ¶ 19; Def. Ex. 15. Tuchek subsequently drafted Leeber for the trainmaster position in Ashtabula held by Larson. Def. Ex. 12, Tuchek Aff. ¶ 20. Because Larson was in the fourth quartile, he was not eligible to be drafted for another management position once he was replaced by Leeber.

Larson was informed by CSX in July 2003 that he was being removed from his position as a trainmaster. Def. Ex. 1, Larson Dep. p. 11. He declined a severance package offered by CSX, opting instead to return to the union ranks by exercising his seniority rights. Def. Ex. 1, Larson Dep. pp. 15-17. Larson chose to take a union position as a yardmaster in Erie which was part of the Albany division. Def. Ex. 1, Larson Dep. pp. 18-19. Thereafter, Larson applied for a position as an assistant trainmaster in Collinwood and Erie, but was not hired for either position. Def. Ex. 1, Larson Dep. pp. 77-78, 86. It is undisputed that approximately nine (9) trainmasters older than Larson retained their positions following the 2003 reorganization and reduction-in-force. Def. Ex. 12, Tuchek Aff. ¶ 23.

Larson abandoned all claims at oral argument with the exception of the age discrimination claim based upon the loss of his trainmaster position. Hearing Tr. pp. 3-4 [Doc. No. 27].

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'" Id.  (quoting Matsushita, 475 U.S. at 587).

### III. DISCUSSION

Under the ADEA, it is unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "The framework of the evidentiary burdens in actions under the ADEA is now well settled."  Gray v. New York Newspapers, 957 F.2d 1070, 1078 (3rd Cir. 1992).  Under the familiar burden-shifting test articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and further refined in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1983), the plaintiff has the initial burden of establishing a prima facie case of discrimination, the substance of which will vary depending on the type of claim; if the plaintiff is successful, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment decision.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3rd Cir. 2000); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3rd Cir. 1997).  If the employer proffers a legitimate, non-discriminatory reason for its action, the plaintiff must then demonstrate that the proffered reason was merely a pretext for unlawful discrimination.  Goosby, 228 F.3d at 319, citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133 (2000); Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 n.4 (3rd Cir. 1999).

For the purposes of this Motion, CSX does not dispute that Larson has made out a prima facie case of age discrimination related to his removal from the trainmaster position on August 1, 2003.[1]  See Brief in Support p. 6 n.1.  CSX argues that summary judgment is appropriate based upon the failure of Larson to rebut its legitimate, non-discriminatory reasons for his removal, namely, his poor rating on the 2002 performance evaluation.  We therefore confine our analysis

---

[1] Under the ADEA, a plaintiff must establish a prima facie case showing that he was: (1) a member of a protected class (i.e. he was forty years of age or older); (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) the employer retained a "sufficiently younger" employee.  Anderson v. Consolidated Rail Corp., 297 F.3d 242, 249 (3rd Cir. 2002) (quoting Showalter v. University of Pittsburgh Med. Ctr., 190 F.3d 231, 235 (3rd Cir. 1999)).

accordingly.

In order to defeat CSX's summary judgment motion, we must determine whether Larson has pointed to some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3rd Cir. 2000); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 331 (3rd Cir. 1995).

Larson can establish the first prong by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994) (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3rd Cir. 1992)). He may not, however, "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3rd Cir. 1997) (quoting Fuentes, 32 F.2d at 765). In other words, Larson must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109.

To satisfy the second prong, Larson must point to evidence "that proves ... discrimination in the same way that critical facts are generally proved -- based solely on the natural probative force of the evidence." Keller, 130 F.3d at 1111. The second prong can be established by showing that the employer in the past subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not within his class more favorably, or that the employer discriminated against other members of his protected class. Fuentes, 32 F.3d at 765.

Larson's counsel acknowledged at oral argument that in order to defeat summary judgment, Larson had to raise a triable issue of fact as to whether his 2002 performance evaluation score was pretextual. Hearing Tr. pp. 33-34 [Doc. No. 27]. Larson suggests, for instance, that the poor evaluation was unfair because he was required to work in Cleveland and

Ashtabula. Def. Ex. 1, Larson Dep. pp. 49-50. He also argues that it was unfair to base employee decisions on a one year snapshot of an employee's performance. Hearing Tr. pp. 26-28 [Doc. No. 27]. Finally, he suggests that CSX should have taken into consideration the fact that he successfully completed the performance improvement plan in 2003. Id. at pp. 35-36. These arguments, however, do not serve to advance Plaintiff's pretext "ball" down the summary judgment field. It is not for this Court to second-guess CSX's decision to utilize the 2002 performance evaluation as the primary tool in determining which individuals would be subject to losing their positions. Id. at 647 ("Whether sales quotas or evaluation scores are a more appropriate measure of a manager's performance is not for the court (or factfinder) to decide."); see also Kautz v. Met-Pro Corp., 412 F.3d 463, 471 (3rd Cir. 2005) ("Evidence that the method of evaluation an employer used was not the best method does not amount to evidence that the method was so implausible, inconsistent, incoherent or contradictory that it must be a pretext for something else."). In any event, as previously noted, Larson has conceded that he lacks evidence to support an inference that his 2002 performance evaluation was motivated in any way by age animus.

   Larson also argues that an inference of discrimination is raised based on his contention that his trainmaster position was eliminated for the purpose of filling it with an assistant trainmaster position which paid less money. Pl. Ex. 1, Crawford Dep. p. 69. His attempt to equate his salary with his age in arguing that CSX's state reasons were pretextual however, is foreclosed by the Supreme Court's ruling in Hazen Paper Co. V. Biggins, 507 U.S. 604, 611 (1993), which held that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based upon years of service is necessarily 'age based'." Thus, even if CSX replaced Larson because of his salary, such reason would not raise an inference of age discrimination. See Geiger v. AT & T Corp., 962 F. Supp. 637, 643 (E.D.Pa. 1997) (holding that "termination decisions based on compensation level do not violate the ADA, because age is analytically distinct from salary and benefit level"); see also Williams v. Greyhound Lines, Inc., 1998 WL 551981 at *5 (E.D.Pa. 1998) (relying on Hazen in rejecting plaintiff's argument that his termination was age-related because age and salary typically correlate), aff'd, 203 F.3d 818 (3rd Cir. 1999) (Table

case); Storti v. First Fidelity Bank, 1998 WL 404814 at *10 (E.D.Pa. 1998) (rejecting plaintiff's claim in reduction-in-force case that because she was the highest paid employee in her unit such decision amounted to age discrimination; "[s]alary discrimination is not actionable under the ADEA"; citing Hazen); Phillips v. Lehigh Valley Assoc. Of Rehabilitation Centers, Inc., 1995 WL 27152 at *4 (E.D.Pa. 1995) (termination prompted by salary savings does not violate ADEA because "factor motivating the employer is some feature other than the employee's age"); Adams v. Dupont Merck Pharmaceutical Co., 1994 WL 702606 at *5 n.1 (finding under Hazen that plaintiff's claim that he was terminated as a result of a scheme by the employer to rid itself of high salaried employees was precluded as a matter of law), aff'd, 70 F.3d 1254 (3rd Cir. 1995) (Table case).

Finally, Larson seeks to raise a triable issue of fact based upon a claim of disparate treatment. Specifically, Larson argues that two younger employees, Dennis Minniear and Donald Gilkey, were placed in the third rather than fourth quartile despite scores of 15% and 19% respectively on the chart styled "Western Region Bands 5 and Lower." Pl. Ex. 7. Larson, who scored a zero, argues that the younger employees should have been placed in the fourth group as well based upon their percentage scores.

First, the fourth performance group was not comprised of all employees who scored 25% or lower. Charron Aff. ¶ 4 [Doc. No. 25]. Rather, it was limited to the very poorest performers. Id. More fundamentally, however, the very chart upon which Larson relies conclusively negates any inference of disparate treatment. As the chart demonstrates, there are nine (9) employees older than Larson who were placed in quartiles one through three and were retained. Pl. Ex. 7. Equally problematic for Larson is the fact that the final decision as to who would be retained or released as part of the reorganization and reduction in force was made by Anthony Tuchek, the Vice President of the Northern Region for CSX. At deposition, Larson testified that he had the "very high[est] respect" for him and considered him a good manager. Def. Ex. 1, Larson Dep. pp. 34-36. There is no evidence to support an inference that Tuchek's employment decisions were tainted by age animus. Indeed, on this record, it is difficult to see how there could be since Tuchek choose to retain nine (9) employees older than Larson.

For the foregoing reasons, we conclude that Larson has failed to rebut CSX's legitimate

non-discriminatory reasons for his removal from the trainmaster position. Consequently, CSX's motion for summary judgment will be granted.

### IV. CONCLUSION

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE M. LARSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-214 Erie |
| CSX TRANSPORTATION, INC., | ) ) ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this 22nd day of March, 2007, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that CSX Transportation, Inc.'s Motion for Summary Judgment [Doc. No. 17] is GRANTED. Judgment is hereby entered in favor of Defendant, CSX Transportation, Inc., and against Plaintiff, Lawrence M. Larson.

The clerk is hereby directed to mark the case closed.

                                                              s/ Sean J. McLaughlin
                                                              United States District Judge

cm: All parties of record.